IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DON A. R. DOUGAN,

                Plaintiff,

v.                                                                                    OPINION and ORDER

CHRIS S. BUESGEN, JAMIE BARKER, DR. PALOP,                       24-cv-431-jdp
C. GRUBER, S. JANISEN, DR. FILIPESCU,
RN KRIZAN, LPN GINDT, and JANE/JOHN DOE,

                Defendants.

---

Plaintiff Don A. R. Dougan, proceeding without counsel, is currently a prisoner at Oshkosh Correctional Institution. Dougan alleges that when he was at Stanley Correctional Institution, staff delayed in getting him care for a mass in his anus; that delay also exacerbated his mental health problems including severe anxiety. Dougan has made an initial partial payment of the filing fee as directed by the court.

The next step is for me to screen Dougan's amended complaint and dismiss any portion that is legally frivolous or malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. §§ 1915 and 1915A. In doing so, I must accept his allegations as true and construe the complaint generously, holding it to a less stringent standard than formal pleadings drafted by lawyers. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). I conclude that Dougan doesn't currently state any claims that this court can hear, but I will give him a chance to file an amended complaint to better explain his claims.

ALLEGATIONS OF FACT

Dougan suffers from severe depression, anxiety, and post-traumatic stress disorder. In late November 2021, Dougan felt a mass inside his anus that made him uncomfortable. He submitted a health service request asking for a colonoscopy. Defendant Nurses Krizan and Gindt saw him and performed a visual examination by having him bend onto his hands and knees on a table. Krizan and Gindt "whisper[ed] and giggl[ed] during the exam and then told him that they didn't see anything. Dougan believed that an exterior visual exam was unnecessary because the mass was on the inside of his anus.

Dougan continued to ask for a colonoscopy, with staff telling him that a provider visit was pending. In August 2022 Dougan received a physical exam from defendant Dr. Filipescu, who performed only a cursory digital rectal exam and told him that he had hemorrhoids. Dougan asked if they could remove the hemorrhoid; Filipescu said no.

Dougan began to worry that the mass was cancer. Several months later he asked for another exam. In June 2023, defendant Dr. Palop performed a digital rectal exam and noted a mass that he concluded was not a hemorrhoid; he scheduled a consultation with a gastroenterologist. Palop incorrectly noted that Dougan had felt the mass for 8 months instead of 18 months, which may have led to providers considering his condition less urgent.

Over the next few months, Dougan wrote to health staff, including Palop, asking about his gastroenterology appointment and stating, "Early detection is out the window!" Dkt. 1, at 4. In September 2023, Dougan was taken to see defendant Palop, without Dougan having been aware of an appointment. Palop was seated at a computer. Palop stated, "I'm looking for the notes from the consult that I ordered for you to go out to see." *Id.* at 4. Dougan took this to mean that Palop didn't know that Dougan hadn't yet been sent out to the gastroenterologist.

Dougan stormed out of the appointment. He met the next day with a nurse, who asked about Dougan leaving the appointment. Dougan said that medical staff wasn't helping him. These events exacerbated Dougan's anxiety.

Dougan wrote to various medical staffers asking about a colonoscopy and noting the importance of early detection. Staff responded that an appointment was scheduled. In October 2023, Dougan saw a gastroenterologist, who diagnosed the mass as a skin tag. He recommended removal of the skin tag for a biopsy and that Dougan receive a colonoscopy. Dougan submitted health service requests asking for another appointment for the skin-tag removal and colonoscopy. Staff told him that he was referred for a colonoscopy and that they would request a removal/biopsy but that "it will take a while to get this completed." *Id.* at 5.

In November 2023, Dougan met with defendant Nurse Practitioner C. Gruber, who told him that they could "start the paperwork" on a biopsy and colonoscopy appointment if Dougan wanted. *Id.* at 6. Dougan took this to mean that medical staff had not actually made any progress on scheduling an appointment. Dougan's mental health problems were exacerbated by this delay. Dougan submitted requests for psychiatric medication to treat his increased anxiety; he was scheduled for an appointment.

In late December 2023, Dougan was transferred to Wisconsin Resource Center. Staff there ordered a biopsy and colonoscopy, which he received in January 2024.

3

ANALYSIS

A. Screening Dougan's claims

Dougan contends that defendants ignored his medical and mental health needs for about two years. He attempts to bring claims under 42 U.S.C. § 1983 and the Americans with Disabilities Act.

I'll address his § 1983 medical care claims under the Eighth Amendment, which prohibits prison officials from consciously disregarding prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). A medical need is serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, significantly affects an individual's daily activities, *Gutierrez v. Peters*, 111 F.3d 1364, 1371–73 (7th Cir. 1997), or otherwise subjects the prisoner to a substantial risk of serious harm, *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). A defendant "consciously disregards" an inmate's need when the defendant knows of and disregards "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). Conscious disregard involves intentional or reckless conduct, not mere negligence. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).

Dougan contends that defendants delayed in treating both his medical and mental health needs. But there is a problem with any claims about a delay in treatment of his skin tag or in giving him a colonoscopy: Dougan does not adequately allege that he was actually harmed

4

by the delay. *See Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) ("risk is not compensable [for constitutional claim] without evidence of injury"). For instance, he does not say that he was diagnosed with cancer or another malady that could have been prevented had there been no delay in treatment.

Rather, Dougan states that he was harmed by exacerbation of his mental health problems, in particular his extreme anxiety caused by living with a mass in his anus that wasn't being treated. But he doesn't allege that medical-staff defendants intentionally inflicted psychological pain on him; at most, they were negligent in arranging for prompt follow up care. If what he means is that psychological staff consciously disregarded the exacerbation of his symptoms, he doesn't name psychological staff as defendants.

Dougan also seeks to bring claims about two specific incidents: (1) a meeting at which Nurses Krizan and Gindt giggled while visually examining him, which Dougan believes was a needless examination given that the mass was inside his anus; and (2) a cursory digital examination performed by Dr. Filipescu in which he diagnosed Dougan with only a hemorrhoid. Dougan argues that these incidents constituted sexual abuse and he asks that criminal charges be brought against them. This court cannot initiate criminal proceedings against defendants. Sexual assault or humiliation can be the basis for an Eighth Amendment claim, but Dougan's allegations are not enough to state that type of a claim. He contends that those examinations ended up serving no medical purpose, which is really an allegation that defendants negligently performed those allegations. I cannot infer merely from Krizan and Gindt giggling during the exam that they intended to humiliate Dougan rather than perform a bona fide examination.

Dougan also seeks to proceed on claims under the Americans with Disabilities Act, but I conclude that he does not state ADA claims. Because the ADA is an anti-discrimination statute, prison officials usually do not violate them "when failing to attend to the medical needs of disabled prisoners." *See Resel v. Fox*, 26 F. App'x 572, 577 (7th Cir. 2001) (alteration adopted); *Wilson v. Murphy*, No. 14-cv-222-bbc, 2016 WL 1248993, at *6 (W.D. Wis. Mar. 29, 2016). Dougan's allegations do not suggest that he was "discriminated against because he was disabled," *see Resel*, 26 F. App'x at 577, such as by being "deprived of access to medical services that were available to other inmates," *Corbin v. Indiana*, No. 3:16CV602, 2018 WL 1920711, at *3 (N.D. Ind. Apr. 23, 2018).

I will dismiss Dougan's complaint but I will give him a chance to file an amended complaint fixing his pleading problems. In drafting his amended complaint, Dougan should remember to do the following:

- Carefully consider whether he is naming proper defendants and omit defendants who did not personally cause or participate in a violation of his rights.

- Identify all of the individuals who he wishes to sue in the caption of the complaint.

- Describe simply and concisely what actions he believes that each defendant took that violated his rights, using separate, numbered paragraphs.

If Dougan fails to submit an amended complaint by the deadline set below, I will dismiss the case and direct the clerk of court to record a "strike" under 28 U.S.C. § 1915(g).

**B. Recruitment of counsel**

Dougan moves for the court to appoint him counsel, stating that he has mental health problems and has been getting help from other inmates. Dkt. 5. Litigants in civil cases do not have a constitutional right to counsel, and I do not have the authority to appoint counsel to represent a pro se plaintiff in a civil matter. Rather, I can only assist in recruiting counsel who

6

may be willing to serve voluntarily. *See* 28 U.S.C. § 1915(e)(1); *Pruitt v. Mote*, 503 F.3d 647, 654, 656 (7th Cir. 2007) (en banc). Generally, to show that it is appropriate for the court to recruit counsel, a plaintiff must meet three requirements. *Santiago v. Walls*, 599 F.3d 749, 760–61 (7th Cir. 2010). First, he must show that he is unable to afford counsel. Dougan meets this standard.

Second, a plaintiff must first show that he has made reasonable efforts to locate an attorney on his own. *See Jackson v. Cnty. of McLean*, 953 F.2d 1070, 1072–73 (7th Cir. 1992) ("the district judge must first determine if the indigent has made reasonable efforts to retain counsel and was unsuccessful or that the indigent was effectively precluded from making such efforts"). Dougan does not submit any evidence showing that he asked attorneys to take his case.

Third, the plaintiff must demonstrate that his case is one of those relatively few in which it appears from the record that the legal and factual difficulty of the case exceeds his ability to prosecute it. *Pruitt*, 503 F.3d at 654–55. The court must decide for each case "whether this particular prisoner-plaintiff, among many deserving and not-so-deserving others, should be the beneficiary of the limited resources of lawyers willing to respond to courts' requests." *McCaa v. Hamilton*, 893 F.3d 1027, 1036 (7th Cir. 2018) (Hamilton, J., concurring). Dougan doesn't meet this requirement. Right now his task is to amend his complaint to better explain why he believes that defendants violated his rights; he should not need the help of counsel for that task. I will deny Dougan's motion without prejudice, which means that he can renew his motion if he continues to believe that he is unable to litigate the lawsuit himself. But if he refiles his motion, he will need to submit proof that he has contacted attorneys about taking this case and explain what specific litigation tasks that he is unable to accomplish.

ORDER

IT IS ORDERED that:

1. Plaintiff Don A. R. Dougan's complaint, Dkt. 1, is DISMISSED.

2. Plaintiff may have until February 6, 2025, to submit an amended complaint as directed in the opinion above.

3. Plaintiff's motion for the court's assistance in recruiting him counsel, Dkt. 5, is DENIED without prejudice.

Entered January 15, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge